# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JANE DOE § | |
| § | |
| v. § | Civil Action No. 4:16-CV-00138 |
| § | Judge Mazzant |
| THE UNIVERSITY OF NORTH TEXAS § | |
| BOARD OF REGENTS, PRESIDENT NEIL § | |
| J SMATRESK, IN HIS OFFICIAL § | |
| CAPACITY § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #32). After reviewing the relevant pleadings and motion, the Court finds the motion should be denied.

## BACKGROUND

This case arises from an alleged sexual assault on Jane Doe ("Doe") by Derek Rankins ("Rankins") a former adjunct-professor of the University of North Texas ("UNT") and full-time employee at UNT's library. Plaintiff reported the assault to Denton police who conducted a Sexual Assault Nurse Examination ("SANE") exam and took samples to conduct a toxicology test. Throughout Plaintiff's investigation, Denton police retained custody of the SANE exam and of Plaintiff's toxicology results.

That same day, Plaintiff reported the assault to Rodney Mitchell ("Mitchell"), Junior Dean of UNT. Mitchell directed Plaintiff to file a report with the Office of Equal Opportunity ("OEO"), gave her his cell number, set up a safe room in the Santa Fe Dorm, and arranged a police escort for Plaintiff to and from her safe room. Mitchell told Plaintiff that the Santa Fe Dorm was temporary and that she would have to either move back to her apartment or begin to pay on February 2, 2015.

On January 13, 2015, Mitchell took Plaintiff to the OEO to meet Senior Investigator Kelly Gould ("Gould"). Plaintiff informed Gould of what happened and formally filed her complaint. Gould told Plaintiff that the investigation would be completed in forty-five to sixty days. According to the current Vice President of the OEO, there must be a compelling reason to keep an investigation open longer than forty-five days and the parties must be notified of that reason.

During Plaintiff's investigation, Gould was the OEO's only investigator. Gould had about ten investigations open at the time of Plaintiff's complaint. This was her first sexual assault. Gould officially began FMLA leave in late April 2015, but missed several days beginning in early March. Gould was on FMLA leave for about four weeks.

On January 16, 2015, Gould contacted Interim Vice President for Community Engagement, Dr. Jean Keller ("Keller"), regarding Rankins. Gould and Keller then contacted the library and decided to reassign Rankins's adjunct duties that were set to begin on January 20, 2015. The same day, Gould interviewed Rankins and informed him of the complaint. Rankins claimed that he had consensual sex with Plaintiff. Later that day, UNT sent a written notification of the complaint to Rankins memorializing the meeting and allegations against him. Meanwhile, Plaintiff met with Mitchell and told him that she saw Rankins on a sidewalk on or near campus while she was on the bus.

On January 17, 2015, the Interim Dean for the College of Visual Arts and Design sent Rankins a letter informing him that his adjunct position had been reassigned and ordering him not to enter the art building or Oak Street Hall. Gould claims that she immediately informed Plaintiff of this decision. However, Plaintiff claims that she was not told until mid-February.

Although UNT reassigned Rankins's adjunct position, he remained a full-time employee in the library. Rankins was assigned to the scanning lab in the back of the library's third floor. Restrooms are not located in the scanning lab. The only restrooms are located in the stairwells in the corners of the building. Rankins did not have to clock in and his hours were flexible, as long as he did forty per week.

Classes began on January 20, 2015. That same day, the Dean of Libraries Martin Halbert informed Rankins, once again, that he was not to enter the College of Visual Arts and Design building unless authorized to do so by the college. Throughout the semester, Plaintiff was depressed and fearful of running into Rankins. She stopped attending classes regularly and avoided the library where she knew Rankins worked. The first week of school, Plaintiff needed to go to the library to complete an assignment because her books were not in, but she did not go because she feared an encounter with Rankins. Plaintiff informed Gould of this. Rankins also had friends who attended classes in the art building with Plaintiff. One friend in particular, Jeremy Chavez ("Chavez"), would stare at Plaintiff in a way that made her feel uncomfortable and threatened.

Plaintiff also began withdrawing from social activities because she feared running into Rankins. Plaintiff confined herself to her apartment, not leaving for several weeks at a time. One night when Plaintiff did go to a local bar, a stranger approached her and asked probing questions about her assault and investigation until she began to cry. Plaintiff reported this incident to Gould, but did not hear anything further.

At the end of the semester, Plaintiff sought Mitchell's help in obtaining "incompletes" in her classes. Mitchell was not available for two weeks in late April and early May. UNT did not

assign a new advocate for Mitchell's absence. Ultimately, Plaintiff was unable to obtain "incompletes" because of her many absences. As a result, Plaintiff's grades declined.

During Gould's leave in late April and May, UNT hired two people to finish Plaintiff's investigation. First, UNT hired Jared Davis ("Davis") in May 2015. Davis reviewed Gould's work, but did not interview any witnesses or Gould about the investigation. Davis finished his investigation on May 29, 2015. That day, Davis met with Plaintiff and her attorney. Plaintiff's May 29 meeting was the first time that UNT informed her as to why the investigation took longer than 45 days. On June 1, 2015, UNT hired Joann Woodard ("Woodard") as Vice President of OEO. Woodard took over the investigation from Davis by reviewing the previous work, but did not interview any person. Woodard sent Plaintiff an outcome letter on July 29, 2015.

On May 5, 2015, Rankins resigned from his position in the library. Plaintiff was not notified of his resignation.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the

motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but must "refrain

from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Plaintiff purports to allege two causes of action under Title IX. Plaintiff first alleges a clearly unreasonable response to her complaint. Second, Plaintiff alleges a hostile education environment. After a careful review of the pleadings and applicable law, the Court reads Plaintiff's complaint to make only one claim: a hostile education environment under Title IX.

To state a claim that a district was deliberately indifferent to sexual harassment in violation of Title IX, a plaintiff must show the school (1) had actual knowledge of the harassment; (2) the harasser was under the school's control; (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (quoting *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). UNT only argues the final two elements in its motion for summary judgment.

A hostile education environment is another way of proving that the harassment was severe, pervasive, and objectively offensive. A Title IX hostile education environment claim is "governed by traditional Title VII 'hostile environment' jurisprudence." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003). A plaintiff may assert the theory of "hostile environment" where the acts of sexual harassment are sufficiently severe to interfere with the workplace or school opportunities normally available to the worker or student. *Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 66 (1986). The Court must look at all the circumstances with

an appropriate sensitivity to the social context. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). These circumstances may include the frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with the student's educational environment. *Harris*, 510 U.S. at 23. The environment must be "both objectively and subjectively offensive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To be deliberately indifferent, a school's "response to the harassment or lack thereof [must be] clearly unreasonable in light of known circumstances." *Davis*, 526 U.S. at 648. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). "[D]etermining what constitutes appropriate remedial action . . . will necessarily depend on the particular facts of the case." *Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660–61 (5th Cir. 1997) (internal quotations omitted)).

UNT argues that the harassment was not severe or pervasive because the mere possibility of encountering Rankins was not severe and pervasive and because Plaintiff did not suffer additional discrimination due to deliberate indifference of UNT. UNT also argues that it did not act with deliberate indifference with regard to the harassment because it acted swiftly to provide safe housing, took away Rankins's faculty appointment, prohibited Rankins from the art buildings, and gave Plaintiff an advocate, which she used many times.

Plaintiff argues that the harassment was severe and pervasive because it interfered with educational opportunities such as going to school, the gym, the library, and social interactions. Plaintiff argues that UNT was deliberately indifferent because (1) it failed to conclude its investigation until after a "lengthy and unjustified delay;" (2) UNT failed to prevent further encounters between Plaintiff and Rankins; (3) UNT did not keep Plaintiff informed of remedial actions that were taken; and (4) UNT's remedial actions were inadequate. The Court finds that a genuine issue of material fact exists as to both elements.

The facts taken in the light most favorable to Plaintiff show that she was subjectively and objectively denied educational opportunities. Plaintiff was unaware of the remedial actions taken against Rankins for at least one month after the alleged assault. During that time, Plaintiff did not enter the library as was required to complete her assignments; she did not attend classes regularly; and stayed in her apartment for weeks at a time out of fear of running into Rankins. Throughout the entire investigation, Plaintiff had a likelihood of encountering Rankins on the third floor of the library due to its layout and Rankins's unpredictable schedule. Chavez gave Plaintiff harassing glares while she was in the art building. Finally, Plaintiff's grades dropped and she was unable to obtain incompletes because of her many absences.

Fact issues also remain as to UNT's response to the harassment. After Plaintiff's initial complaint, she returned to Mitchell or Gould more than eleven times. As early as January 13, 2015, Plaintiff told Gould that she could not enter the library. Despite knowing this, Gould did not inform Plaintiff of Rankins' restrictions. On January 16, Plaintiff told Mitchell that she saw Rankins on the sidewalk near campus while she was on the bus. In late February, Plaintiff informed UNT about an odd encounter with a stranger at a bar who asked probing questions into her assault and investigation. Sometime in February or March, Plaintiff reported that her friends

saw Rankins outside of the art building and Plaintiff had to hide to avoid him. Plaintiff also informed UNT that she saw Chavez outside of her classroom in the arts building once or twice. Chavez did not have any classes in that building, and was good friends with Rankins. Plaintiff felt threatened and harassed from the looks that Chavez gave her. Plaintiff claims that she saw Chavez at other times when she was eating or walking around campus, but she did not say whether she reported these instances. For several weeks in late April and early May, both Mitchell and Gould were out of the office and Plaintiff was unable to obtain counseling. Finally, when Mitchell returned from his illness in May, Plaintiff informed him that she was having difficulty focusing and was looking for assistance in obtaining "incomplete" grades in classes so that she could finish her work after the semester ended. Taking these facts in their social context and the light most favorable to Plaintiff, the Court finds that genuine issues remain as to UNT's response.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #32) is hereby **DENIED**.

**SIGNED this 2nd day of June, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE